1996 SD 48

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kenneth Craig (K.C.) HAUGE, Defendant and Appellant.**

**No. 19263.**

Supreme Court of South Dakota.

Argued March 13, 1996.

Decided April 24, 1996.

Rehearing Denied May 22, 1996.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Timothy J. Langley, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] The questions presented are whether a domestic abuse protection order may prohibit sending letters and whether the term "verbal contact" includes letter writing. Asserting his First Amendment right to free speech and protesting "overly broad" language in the order, Defendant appeals his conviction for violating a protection order by sending a letter. We affirm.

## Facts

[¶ 2] On December 28, 1994, Brenda Hansen appeared for a hearing on her petition for a protection order against her ex-husband, Kenneth Hauge. Her petition alleged:

> Last November, 93, KC [Hauge] physically beat me—threaten me, kicked me from head down, cornered me and would not let me go. (please see past police reports!) as well as verbal abuse. My children were home at the time of above incident. KC has continued to write letters to me, even while in jail. He is obsessed with lies about my personal life. As of today 12–6–94 I received a letter from him asking me to visit him to watch a tv program concerning similar to our situation.

Hauge, acting pro se, never specifically objected to the relief she sought, but challenged the domestic protection statutes, saying "This Protection Order is the most abused law in the state of South Dakota.... It's unconstitutional, overly broad, and it's dangerous." Circuit Judge Lee D. Anderson told Hauge

> [T]here comes a point in time when you just need to understand that she has the right to not have you come to her house, to not have you write letters.... And so, if you will, you know, look over the terms of the order of protection and abide by those with respect to your contact with her....

The court found domestic abuse had occurred and was likely to continue. Accordingly, the protection order directed Hauge to "not verbally contact Plaintiff in any manner, which includes phone contact or contact through third parties, and ... not verbally abuse or threaten Plaintiff."

[¶ 3] On March 18, 1995, Hansen received a letter at her home from Hauge. She opened it, read it, and turned it over to the Davison County State's Attorney. Peppered with expletives, the letter contained no overt threats, yet expressed Hauge's "anger and rage" at government officials who had "set it all up." It urged her to "take responsibility" for her complicity with these officials. For this letter Hauge was charged with violating the protection order. Representing himself at trial, Hauge admitted sending the letter,

telling the jury in his opening statement, "I'm here today under willful intent. I sent that letter on purpose. For the very purpose of getting in front of you." Hauge contended the domestic abuse laws (SDCL Ch 25–10) were overbroad and unconstitutional. He was convicted pursuant to SDCL 25–10–13 and sentenced to one year in the county jail. Hauge appeals. We consider the following issues:

I. Whether the protection order was unconstitutionally overbroad.

II. Whether the protection order unconstitutionally violated Hauge's due process rights because of its vagueness.

### Analysis

[¶ 4] Challenges to the constitutionality of a statute meet formidable restrictions:

There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Sedlacek v. Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989) (citations omitted). *See also State v. Heinrich*, 449 N.W.2d 25, 27 (S.D.1989)(this Court will uphold the statute unless its unconstitutionality is shown beyond a reasonable doubt); *In re Certification of Question of Law (Elbe)*, 372 N.W.2d 113, 116 (S.D.1985)(statutes are presumed to be constitutional).

[¶ 5] Though interrelated, the concepts of vagueness and overbreadth are con-

ceptually distinct doctrines.[1] *State v. Morrison*, 341 N.W.2d 635, 637 (S.D.1983). Vagueness is usually associated with the right to due process found in the Fifth and Fourteenth Amendments, whereas overbreadth is concerned with the First Amendment guarantees of free speech. *Id.* We have previously analyzed the type of speech not protected by the guarantees of the First Amendment. *State v. Diede*, 319 N.W.2d 818, 821–22 (S.D.1982); *State v. Crelly*, 313 N.W.2d 455, 456 (S.D.1981). In *Crelly*, the terms "obscene" and "lewd," as used in SDCL 49–31–31(1), were not deemed overbroad and vague.

Certainly the State has a legitimate interest in providing its citizenry with protection from perverse telephone calls. With the passage of SDCL 49–31–31(1), our Legislature intended to ban the type of unreasonable conduct which, by its very nature, erodes the peace of mind and solitude of an unsuspecting individual. *Conduct of this nature is obviously not protected by the guarantees of free speech provided for in the First Amendment.*

*Id.* at 457 (emphasis added). With these precepts in hand we now address the nature of the restraint contained in the protection order.

### [¶ 6] I. Whether the protection order was unconstitutionally overbroad.

[¶ 7] Hauge maintains that both the statute and the order are unconstitutional, but because criminal sanctions allowed under our domestic abuse laws may only be imposed upon a violation of a protection order, we focus our analysis on the specific terms of the order itself.[2] SDCL 25–10–13 has no general application to the public, except as it enables a court to restrain a person subject to the order. Hauge believes the protection

---

1. The State asserts Hauge failed to properly preserve the overbreadth and vagueness issues for appeal by failing to raise these issues to the circuit court. Hauge objected on numerous occasions that the protection order was overbroad and unconstitutional. Although he did not expressly mention the vagueness issue, the two concepts are so commingled we find Hauge's objections were properly made in order to preserve both issues for appeal. *See State v. Diede*, 319 N.W.2d 818, 821–22 (S.D.1982); *State v. Crelly*, 313 N.W.2d 455, 456 (S.D.1981)(Court's

analysis did not differentiate the two concepts when considering constitutionality of state statute).

2. SDCL 25–10–13 provides in part:

If a temporary protection order or a protection order is granted pursuant to this chapter, and the respondent or person to be restrained knows of the order, violation of the order is a Class 1 misdemeanor.

order imposed overbroad restrictions on his right of free speech, embodied in the First Amendment of the United States Constitution and the South Dakota Constitution. *See* SDConstArt VI § 5. Constitutionally guaranteed freedom of expression is "delicate and vulnerable." *N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Overbroad restrictions touching speech are particularly repugnant when they carry criminal sanctions, unless they are drawn with "narrow specificity." *Id.* The test is "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Center, Inc.,* —— U.S. ——, ——, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593, 608 (1994).

[¶ 8] Without a doubt, domestic abuse protection orders preserve compelling governmental interests.[3] *See* SDCL Ch 25–10. Judges must exercise broad authority to fashion necessary safeguards for the unpredictable insecurities victims of domestic abuse often face. SDCL 25–10–5 provides in part:

> Upon notice and a hearing, if the court finds by a preponderance of the evidence that domestic abuse has taken place, the court may provide relief as follows:
>
> * * *
>
> (6) Order other relief as the court deems necessary for the protection of a family or household member, including orders or directives to a sheriff or constable.

This statute only applies when the court determines domestic abuse has taken place and relief is necessary to protect family or household members. The circuit court found it necessary to compel Hauge to stop contacting his ex-wife, as part of her need for protection. To shield victims of domestic violence from threats and intimidation, courts must sometimes prohibit all contact between the abused and the abuser. Those who feel assailed in their own homes are often the most vulnerable.

[¶ 9] There are few ideals more fundamental than "[t]he State's interest in protecting the well-being, tranquillity, and privacy of the home ... in a free and civilized society." *Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) (citations omitted). The home is "the last citadel of the tired, the weary, and the sick[,]" (*Id.* at 484, 108 S.Ct. at 2502) and a refuge for those who seek peace. Allowing a person who has physically abused a family member to continue offensive interaction, would surely make protection orders a feeble device for maintaining peace. By using the mail to contact his ex-wife, Hauge's claimed right to free speech goes beyond freedom of expression in a public forum, and intrudes upon Hansen's personal sanctuary—her home.

■■■ [¶ 10] We cannot say the restraint upon Hauge's conduct in this case falls within the ambit of the rights of free speech protected by the First Amendment. *State v. Vogel,* 315 N.W.2d 324, 327 (S.D.1982). In the middle of domestic strife, preserving the mental and emotional health of the vulnerable must override other less compelling interests. *Degenaars v. Degenaars,* 186 N.J.Super. 233, 452 A.2d 222, 223 (1982). The cycle of violence so common to domestic abuse, includes attempts at reconciliation often amounting to nothing more than harassment. *Eastman v. Eastman,* 429 So.2d 1058, 1059 (Ala.Civ.App.1983). The protection order was not an impermissibly overbroad intrusion on Hauge's rights.

[¶ 11] **II. Whether the protection order unconstitutionally violated Hauge's due process rights because of its vagueness.**

■■■ [¶ 12] Essential to imposing criminal penalties under SDCL 25–10–13 is that defendants must know they are violating the order. To find him guilty the jury had to decide Hauge knew he was disobeying the protection order when he mailed a letter to his ex-wife. Hauge contends the protection order merely enjoined him from "verbal contact" and his conviction for what he wrote, as

---

**3.** "Domestic abuse" is defined as "physical harm, bodily injury or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury between family or household members[.]" SDCL 25–10–1(1)

opposed to what he spoke, confirms the unconstitutional vagueness of the order.

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice [of what] conduct is forbidden.

*Diede*, 319 N.W.2d at 821 (quoting *Crelly*, 313 N.W.2d at 456).

 [¶ 13] Hauge insists even the jury was confused by the vagueness of the protection order. While deliberating, the jury sent a note to the judge stating "we need legal definition of the word verbal in this particular protection order." With both parties present, the court answered with an abbreviated definition from Black's Law Dictionary: "Verbal, strictly of or pertaining to words, expressed in words, whether spoken or written but commonly in spoken words." Hauge made no proper objection to this definition. A failure to specifically object is a waiver of the right to raise the issue on appeal. *State v. Sprik*, 520 N.W.2d 595, 601 (S.D.1994); *State v. Wall*, 481 N.W.2d 259, 265 (S.D. 1992). Trial court rulings are presumed correct; we will not seek reasons to reverse. *Lytle v. Morgan*, 270 N.W.2d 359, 360 (S.D. 1978).

[¶ 14] Hauge argues the "jury instruction itself is not the subject of the appeal," but the jury's confusion as evidenced by its question illustrates that persons of common intelligence could not discern the meaning of the term "verbal contact." Perhaps, hypothetically, one may encounter difficulty understanding the precise scope of this term. But the order enjoined one person, Hauge, and prohibited his contact with one person, Hansen. If he was truly confused or aggrieved by the scope of the order he could have sought to modify or dissolve it, before choosing to violate it. *See Walker v. Birmingham*, 388 U.S. 307, 317, 87 S.Ct. 1824, 1830, 18 L.Ed.2d 1210 (1967)(one may be free to violate an unconstitutional statute, but not nec-

essarily an injunction even if it echoes an invalid statute).

[¶ 15] That Hauge knew what the protection order prohibited is quite evident: the order was precipitated not only by his abuse of his ex-wife, but also by the earlier letter he sent to her from jail. On the day the order was entered the court told him "she has the right ... to not have you write letters...." Then at his trial he told the jury, "I'm here today under willful intent. I sent that letter on purpose. For the very purpose of getting in front of you." Given what Hauge knew, considering his admissions and the fact that the judge told him not to write letters, the injunction against "verbal contact" as applied to him was not impermissibly vague.

[¶ 16] Affirmed.

[¶ 17] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ, concur.

