2005 SD 42

**Cody MEDEARIS & Cheryl Medearis, Plaintiffs and Appellees,**

v.

**Sherri WHITING, Defendant and Appellant.**

**No. 23235.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Reassigned on Feb. 3, 2005.

Decided March 23, 2005.

Al Arendt, Pierre, South Dakota, Attorney for plaintiffs and appellees.

B.J. Jones, Rapid City, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice (on reassignment).

[¶1.] Cheryl Medearis (Grandmother) petitioned the circuit court to obtain visitation rights with her four-year-old grandson, C.W. Although C.W.'s mother objected, the trial court granted visitation. Because the trial court's application of the grandparent visitation statute violated the mother's due process rights under *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), we reverse.

### Facts and Procedural History

[¶2.] Grandmother's son, Cody Medearis (Father) and Sherri Whiting (Mother) were involved in a domestic relationship. They had a son, C.W., who was born on November 6, 1999. Grandmother was present at the birth. Following C.W.'s birth, Mother and Father lived together in Valentine, Nebraska, and Rapid City, South Dakota. The couple then moved to Mission, South Dakota, where they resided with Grandmother for four or five months when C.W. was two years of age. Grandmother frequently babysat and cared for C.W. during the time that they were living with her in Mission.

[¶3.] On January 3, 2002, Mother and Father got into a disagreement, and Mother and C.W. moved out of Grandmother's house. Shortly thereafter, on January 13, 2002, Mother was raped two times by Father. He was ultimately convicted of aggravated sexual assault and was sentenced to 108 months in a federal penitentiary.

[¶4.] On February 19, 2002, Mother received a permanent protection order against Father from the Rosebud Sioux Tribal Court. The protection order prohibited Father from contacting Mother or C.W. In April, 2003, the Rosebud Sioux Tribal Court also changed C.W.'s name from Medearis to Whiting. Mother and C.W. later moved from the Rosebud Indian Reservation to Marshall County, South Dakota.

[¶5.] This dispute began in Marshall County Circuit Court when Grandmother and Father [1] petitioned for visitation rights under SDCL 25–4–52.[2] Although Grandmother conceded that she had never formally asked for visitation, she contended that she had effectively been denied visitation. The basis of Grandmother's contention was that in February of 2002, approximately one month after the rapes, Mother refused Valentine's Day cards that Grandmother had sent to C.W. Grandmother also alleged that in November of 2003, she wrote a letter to Mother and enclosed birthday cards for C.W. Mother denied receiving the letter, but Grandmother asserted that the letter was never returned to her.

[¶6.] Mother objected to Grandmother's request for court-ordered visitation for

---

1. Although Father was originally included in the petition, the trial court stated at trial "I think from our discussion on the phone and so forth, and the statements made by plaintiff through her attorney, that [Father] really is not an issue here, it would just be between the grandmother concerning the grandchild, but not any relationship to any visitation by [Father] himself and that's understood then."

2. SDCL 25–4–52 provides:
   The circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if the visitation is in the best interests of the grandchild and:
   (1) If the visitation will not significantly interfere with the parent-child relationship; or
   (2) If the parent or custodian of the grandchild has denied or prevented the grandparent reasonable opportunity to visit the grandchild.
   The circuit court shall issue any orders necessary to enforce or to protect visitation rights granted pursuant to this section.
   As used in this section, the term grandparents includes great-grandparents.

two reasons. First, Mother's relationship with Grandmother had severely deteriorated due to Grandmother's conduct after the rapes. Second, Mother desired to control how C.W. would learn about his father and his crimes.

[¶ 7.] Mother's first concern began on the night of the rapes. Although Mother was no longer staying with Grandmother on that night, Mother went to Grandmother's home after she was raped. There is conflicting testimony as to what occurred when Mother arrived. Mother contends that Grandmother merely told Mother to take a shower and get some rest, while Grandmother contends that she offered to give Mother a ride to the hospital. Under either version of the facts, there is no dispute that the rapes were not reported at Grandmother's home. Rather, Grandmother's boyfriend eventually gave Mother a ride to Mother's aunt's house, where the rapes were reported.

[¶ 8.] From Mother's perspective, Grandmother also inappropriately supported Father in his criminal trial. Grandmother testified as a witness for her son, indicating that she did not know what happened the night that Mother was raped. Mother believed that Grandmother did not tell the truth when testifying. In fact, Mother indicated that she believed Grandmother's testimony made it sound as if Mother had made up the story of being raped. Mother was also upset because Father had called her while he was under a court restriction not to, and Mother believed that Father had obtained her phone number from either Grandmother or Grandmother's attorney.

[¶ 9.] These concerns were corroborated by evidence at the visitation hearing. In that hearing, one of Grandmother's witnesses conceded that Grandmother was "concerned about what happened in that car that night [of the rapes] and whether the truth was told." Furthermore, there was evidence that when Father violated the conditions of his release and was wanted on an arrest warrant, Grandmother initially denied having contact with him, but later acknowledged that she had spoken with him. Finally, Grandmother apparently never indicated that she was sorry for what her son had done.

[¶ 10.] In addition to the foregoing concerns, Mother felt that she had the right to control how C.W. would learn of the rapes and the fact that his Father was in the penitentiary. Mother wanted to control the reintroduction of the then four-year-old with Father's family. She was extremely concerned about how C.W. would learn of the incident and what he would think about his parents. Mother was also concerned that the incident would accidentally or intentionally be disclosed during Grandmother's visitation. Consequently, Mother testified that she, rather than Grandmother, "ha[d] the right to tell [C.W. about his dad] when [C.W. was] old enough to understand." Mother testified that when C.W. was old enough, she intended to let him make his own decisions and she would respect those decisions if C.W. chose to be in contact with his Father or Grandmother. However, in light of all the foregoing concerns arising from this tragedy, Mother wished to restrict contact with Father's family at that time.

[¶ 11.] Grandmother disagreed and requested court-ordered visitation rights under SDCL 25–4–52. Mother moved to dismiss the petition on the ground that Grandmother's suit did not meet the standards for grandparent visitation required by the statute.[3] She also contended that

3. We upheld the constitutionality of the *current* version of the statute in *Currey v. Currey,* 2002 SD 98, 650 N.W.2d 273 (severing that portion of the prior statute creating a pre-

forced visitation would violate her due process right to raise her child as she wished. The trial court denied the motion to dismiss, concluding that Grandmother was entitled to an evidentiary hearing.

[¶ 12.] After hearing the evidence, the trial court found that although Grandmother had not seen C.W. in two years, there was a close and loving relationship between Grandmother and C.W. and that it would be in C.W.'s best interest for that relationship to continue. The trial court also found that granting Grandmother visitation rights would not "significantly interfere" with the parent-child relationship and that Grandmother had been denied visitation. The trial court ultimately awarded restricted[4] visitation rights to Grandmother.

[¶ 13.] Mother appeals raising two issues: (1) whether the trial court erred in concluding that Grandmother met the requirements of SDCL 25-4-52; and (2) whether the trial court violated Mother's due process rights by granting visitation to Grandmother. Because we conclude that the trial court's application of the statute violated Mother's due process rights, we only address the second issue.

### Analysis and Decision

■ [¶ 14.] Mother claims that the trial court erred in applying the statute by inappropriately shifting to Mother a burden of demonstrating that Grandmother's visitation would be a detriment to C.W. Mother further contends that the trial court unconstitutionally applied a presumption in favor of grandparent visitation

in violation of *Currey v. Currey,* 2002 SD 98, 650 N.W.2d 273, and *Troxel,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49. "We review constitutional questions *de novo." State v. Aesoph,* 2002 SD 71, ¶ 43, 647 N.W.2d 743, 757 (emphasis in original) (citations omitted).

[¶ 15.] SDCL 25-4-52 requires a grandparent to make two showings. First, the grandparent must prove that visitation is in the grandchild's best interests. *Id.* Second, if visitation is found to be in the best interests of the child, the grandparent must prove that visitation will not significantly interfere with the parent/child relationship or, in the alternative, that the parent has denied or prevented the grandparent a reasonable opportunity to visit their grandchild. *Id.*

### *Presumptions and Burden of Proof Under the Statute*

[¶ 16.] Mother contends that the trial court erred in adopting a presumption that grandparent visitation was in the child's best interest. This Court has generally stated that the *grandparent* must show that their visitation is in the child's best interest under SDCL 25-4-52. *Currey,* 2002 SD 98, ¶ 14, 650 N.W.2d at 277-278.

[¶ 17.] The United States Supreme Court has more specifically addressed the constitutional presumptions that must be given to a fit parent's decision to restrict a grandparent's visitation request. *See Troxel* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49. The Supreme Court began its analysis by reaffirming the principle that the Due

___

sumption in favor of grandparents if a parent of that grandchild had died). Today's case only involves the application of the current statute.

4. The restrictions were as follows: For the first year, Grandmother was limited to one four-hour period per month, and the visitation was to be supervised. For the second

year, Grandmother was allowed one eight-hour period of unsupervised visitation per month. In the third year, Grandmother was allowed one twenty-four-hour period of unsupervised visitation per month. The trial court also ordered that Grandmother should not discuss any details, opinions, or facts of the crimes committed by Father against Mother.

Process Clause affords parents the fundamental right to raise their children as they wish. *Id.* at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57. Therefore, the Supreme Court noted that states are limited in intervening in a fit parent's decisions concerning child rearing:

> ... so long as a parent adequately cares for his or her children (*i.e.*, is fit) there will normally be no reason for the State to inject itself into the private realm of the family to further *question the ability of that parent to make the best decisions* concerning the rearing of that parent's children.

*Id.* at 68–69, 120 S.Ct. at 2061, 147 L.Ed.2d at 58 (emphasis added).

■■■■ [¶ 18.] Moreover, even when state intervention is justified, there are two restrictions that must be applied in the decision-making process. First, a burden of disproving that grandparent visitation would be in the best interests of the child may not be placed upon the parent. This means that a trial court may not presume that grandparent visitation is in the best interests of the child. *Id.* at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at 59. The Supreme Court specifically disapproved of the Washington trial court's presumption favoring grandparent visitation because such a presumption effectively placed on that mother "the burden of *disproving* that visitation would be in the [children's] best interest. ... [T]he [trial] court's presumption failed to provide any protection for [her] fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69–70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59. The second restriction is that the trial court "must accord at least some special weight to the parents own determination." *Id.* at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59.

[¶ 19.] We embraced these *Troxel* principles in *Currey*, 2002 SD 98, ¶ 13, 650 N.W.2d at 277 (upholding the constitutionality of portions of South Dakota's grandparent visitation statute). We upheld those provisions that did not "unreasonably deprive the custodial parent of the fundamental right to make decisions concerning the care, custody, and control of the children." *Id.* In doing so, we noted that the burden of proof had to be placed on the grandparents, and that it was unconstitutional to create "a presumption in favor of the grandparents." *Id.* ¶¶ 13–14. The "special weight" requirement was also noted. *Id.* ¶ 25 (Zinter, J., concurring).

[¶ 20.] In reviewing the trial court's application of these restrictions, it must be reiterated that the burden is improperly imposed on a parent when a court presumes that grandparent visitation is in the best interests of the child. The United States Supreme Court made this point very clear by specifically disapproving the Washington trial court's presumption that:

> I think in most situations a commonsensical approach [is that] it is normally in the best interest of the children to spend quality time with the grandparent, unless the grandparent, [*sic*] there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children.

*Troxel*, 530 U.S. at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at 59.

■■■■ [¶ 21.]Although this type of presumption is prohibited by *Troxel*, it was applied by the trial court in the case now before us. In granting Grandmother visitation rights, the trial court stated "*[i]t's a basic premise* that we work on that people should know their parents and their *grandparents* as much as possible *unless there is some real problem or real detriment.*" (Emphasis added.) Thus, like the trial court in *Troxel*, the trial court here improperly presumed that grandparent

visitation was in the best interests of the child unless some real problem or real detriment could be shown. Furthermore, under *Troxel,* this presumption improperly placed upon Mother the burden of disproving that Grandmother's visitation was in the best interests of the child.[5]

### Special Weight or Deference to a Fit Parent's Decision

[¶ 22.] Even if the correct burden of proof had been applied, the trial court failed to adhere to the second *Troxel* restriction requiring deference to a fit parent's decision. This means that some "special weight" must be given to the parent's own determination. *Troxel* stated:

[i]n an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the

first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, *the court must accord at least some special weight to the parent's own determination.*

*Id.* at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59 (emphasis added).

■ [¶ 23.]Here, the record reflects that Mother's own determination regarding how and when Fathers family would be reintroduced into C.W.'s life was given no special weight or deference. Instead, the trial court presumed that Grandmother's visitation was in the child's best interest and that there must be a "real problem or detriment" before a grandparent would normally be prevented from having visitation rights with a grandchild. Therefore, like the trial court in *Troxel,* the trial court here erred in failing to give any "special weight" or deference to Mother's determination of the best way to reintroduce C.W. to his Father's family.[6] *See id.* at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at 58.

---

5. Even if the trial court had not applied this presumption and Grandmother had been required to bear her burden of proof, she failed to establish that it was in the best interests of C.W. to require grandparent visitation at this time. In fact, aside from the improper presumption, Grandmother produced no evidence that the best interests of C.W. required Grandmother's visitation. Grandmother's evidence did not establish any recent grandparent relationship. Although C.W. lived with Grandmother for four or five months in 2001–2002, when C.W. was less than two years of age, at the time of the trial Grandmother had not seen C.W. in two years. There was also no showing by Grandmother that Mother was an unfit parent. Thus, Grandmother's proof established nothing other than the fact that C.W. had resided in Grandmother's house and Grandmother had a relationship with C.W. when he was approximately two years of age.

6. In discussing the validity of the Washington statute in *Troxel,* the Supreme Court highlighted the constitutional defect in failing to accord special weight or deference to a par-

ent's child-rearing determination concerning grandparent visitation:

[o]nce the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judges view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Id.* at 67, 120 S.Ct. at 2061, 147 L.Ed.2d at 57–58 (emphasis in original).

*Conclusion*

[¶ 24.]This case involved a disagreement over a fit mother's decision concerning how and when the child would be informed of his father's crimes and incarceration in the penitentiary. It also involved a disagreement over a fit mother's decision concerning the best method of reintroducing her child to the family of the father that raped her. Such disagreements involve parental decision-making that does not normally justify State intervention. Moreover, even if state intervention were justified, the trial court improperly imposed upon Mother the burden of proof and it failed to accord her decision special weight. Under *Troxel*, this application of South Dakota's grandparent visitation statute was an unconstitutional infringement of Mother's fundamental right to make "the best decision" on these matters.

■ [¶ 25.]Ironically, the unconstitutional application of the statute is demonstrated by restating *Troxel's* conclusion, substituting these parties and this trial court's findings:

> Considered together with the [trial court's] reasons for awarding visitation to [Grandmother], the combination of these factors demonstrates that the visitation order in this case was an unconstitutional infringement on [Mother's] fundamental right to make decisions concerning the care, custody, and control of [C.W]. The [trial court] failed to accord the determination of [Mother], a fit custodial parent, any material weight. In fact, the [trial court] made only two formal findings in support of its visitation order. ["[T]here had been a close and loving relationship ... which relationship would be in the best interests of said child to continue."] These slender findings, in combination with the [trial] court's announced presumption in favor of grandparent visitation and its failure

to accord significant weight to [Mother's decision], show that this case involves nothing more than a simple disagreement between the [trial court] and [Mother] concerning [C.W.'s] best interests.

*Id.* at 72, 120 S.Ct. at 2063, 147 L.Ed.2d at 60–61. And, in cases involving such disagreements concerning the child's best interests, we must be mindful that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a ... judge believes a *'better'* decision could be made." *Id.* at 72–73, 120 S.Ct. at 2064, 147 L.Ed.2d at 61 (emphasis added).

[¶ 26.] Because the trial court's application of SDCL 25–4–52 violated the core principles of *Troxel*, we reverse.

[¶ 27.]GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 28.]SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 29.] **FOUR HOURS PER MONTH OF SUPERVISED VISITATION BY THE GRANDMOTHER IS IN THE BEST INTEREST OF GRANDSON AND DOES NOT SIGNIFICANTLY INTERFERE IN THE LIFE OF MOTHER.**

[¶ 30.] The majority opinion *mistakes* the *burden of proof* with the *burden of going forward with the evidence* and reverses. The trial court placed the burden of proof on the Grandmother and she met it, which puts the burden of going forward with the evidence on the Mother. She failed to meet it and we should affirm.

[¶ 31.] SDCL 25–4–52 mandates a two-part test. First, the court must find visitation to be in the grandchild's best interests. Second, the visitation will not sig-

nificantly interfere with the parent/child relationship or, in the alternative, the parent has denied or prevented the grandparent reasonable opportunity to visit the grandchild. These conditions exist and we should affirm.

[¶ 32.] In regard to the first prong of the test, this Court held that a grandparent must show that their visitation is in the child's best interest in accordance with SDCL 25–4–52. *Currey,* 2002 SD 98, ¶ 18, 650 N.W.2d at 278. Mother claims that the trial court erred when it inappropriately shifted the burden to her to demonstrate why Grandmother's visitation would be a detriment to C.W. However, contrary to her assertions, the trial court's order does not place the burden of proof on Mother. Here, the trial court found that there has been a close and loving relationship between Grandmother and C.W. This is evidenced by testimony which established that Grandmother provided food, clothing, shelter, and emotional support to C.W. during his first two years of life, and by Mother's own admission that C.W. had the benefit of a close grandparent/grandchild relationship from the moment of his birth until Mother terminated that relationship. Given this close and loving relationship between Grandmother and C.W., the trial court held that it would be in C.W.'s best interest for the relationship to continue.

[¶ 33.] Mother also contends that the trial court erred in applying the second prong of the two-part test mandated by SDCL 25–4–52. Specifically, she asserts that the trial court erred in finding that the interference caused by the visitation would not be significant enough to deny the request, and also in finding that Grandmother had in fact been denied visitation. The record is clear that the trial court correctly considered each of these issues.

[¶ 34.] Mother admitted that there was nothing in the relationship between C.W. and Grandmother that had been detrimental in the past. Furthermore, the trial court specifically sought to minimize any potential future interference resulting from the visitation through its order specifying the terms and conditions of the visitation. This includes allowing only supervised visits in the first year, gradually stepping-up the length of each visit, and specifically prohibiting Grandmother from discussing with C.W. any details, opinions, or facts relating to the sexual assault that Father committed against Mother. Therefore, it has not been shown that visitation would significantly interfere with the mother-child relationship.

[¶ 35.] In regard to the finding that Grandmother had been denied visitation, the trial court relied on evidence which showed that Mother refused to accept Valentine's Day cards that were sent by Grandmother to C.W. and his older sister, that Grandmother made additional attempts to contact Mother to request visitation, and that in spite of the established grandmother/grandchild relationship Mother made no attempt or offer to allow, encourage, or permit visitation.

[¶ 36.] Based on the above, it has not been shown that the trial court erred in finding that Grandmother satisfied the requirements of SDCL 25–4–52, and therefore we *should* affirm.

[¶ 37.] Mother alleges that the trial court's decision violated her due process rights by forcing her to allow visitation between C.W. and his Grandmother. Mother contends that under the facts of this case, SDCL 25–4–52 is unconstitutional as applied to her because it significantly interferes with her relationship with her son.

[¶ 38.] There is a strong presumption in favor of constitutionality for laws enacted by the legislature. *State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175. This Court has stated that:

[T]he presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Id.* In *Currey*, this Court specifically upheld the constitutionality of SDCL 25-4-52. 2002 SD 98, ¶ 15, 650 N.W.2d at 278. Grandparent visitation that does not "significantly interfere" with the parent/child relationship is constitutional. *Id.* ¶ 13.

[¶ 39.] Although Mother contends under the facts of this case that grandparent visitation will result in "significant interference," she failed to identify anything through her testimony as to how her relationship with her son will be negatively impacted. Mother has only indicated that she has a vague, generalized fear that her son may someday ask his Grandmother about his Father. Yet, she acknowledges that this is a question that she herself may be asked by him at some point in the future.

[¶ 40.] Mother's other concerns in regard to Grandmother deal directly with the relationship between the two of them and have very little to do with Mother's relationship with C.W. Accordingly, the trial court found that visitation would not significantly interfere with the mother-child relationship. The trial court held that Grandmother met her burden of proof that visitation was in the best interests of child and would not significantly interfere with the mother-child relationship.

[¶ 41.] Finally, the majority opinion claims under *Troxel*, that the trial court failed to give special weight or deference to the Mother's own determination regarding the reintroduction of Father's family into C.W.'s life. I disagree because the trial court specifically prohibited Grandmother from discussing with C.W. any details, opinions or facts relating to the sexual assault that Father committed against Mother. Accordingly, I would affirm the trial court.