#24675, #24677-a-SLZ

**2008 SD 125**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KEITH CLOUGH,                                    Plaintiff and Appellee,

    v.

LORRAINE NEZ,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

STEPHEN C. HOFFMAN
PATRICIA A. MEYERS of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter, LLP                      Attorneys for plaintiff
Rapid City, South Dakota                         and appellee.

DANA L. HANNA                                    Attorney for defendant
Rapid City, South Dakota                         and appellant.

* * * *

ARGUED ON OCTOBER 1, 2008

OPINION FILED **12/23/08**

ZINTER, Justice

[¶1.]     Lorraine Nez appeals the circuit court's award of visitation to Keith Clough, a nonparent.  Because the circuit court found extraordinary circumstances for an award of visitation to a nonparent, we affirm.

Facts and Procedural History

[¶2.]     This case involves a visitation dispute regarding five-year-old C.C., who was born on May 26, 2003.  Clough claimed that he had sexual intercourse with Nez in August 2002.  Clough further claimed that Nez subsequently told him she was pregnant and he was the father.  Nez denied that she had sexual intercourse with Clough, but that in order to relieve a "big mental strain," she wanted Clough and his girlfriend Lee Ann Strenstrom (Nez's half-sister) to raise C.C. until Nez was "out of school, and stable."  According to Nez, she made an agreement with Clough and Strenstrom that they would share the responsibility of raising C.C.  According to Clough, however, Strenstrom had little involvement as he and she were only dating "on and off.  She wasn't living with me and what not.  Basically, an on-and-off girlfriend at that point[.]"  Notwithstanding this dispute regarding the nature of the Clough-Strenstrom relationship, there is no dispute that on June 10, 2003, Nez and Clough executed a sworn acknowledgment of paternity expressly indicating Clough was C.C.'s biological father.  A birth certificate was thereafter issued reflecting Clough's surname.

[¶3.]        According to Clough, he took C.C. from Mission to live with him in Sioux Falls two days after her birth.[1]  Clough testified that when he took C.C. to Sioux Falls, he and Strenstrom were not living together, and that he alone raised C.C.  He further testified that Strenstrom only "occasionally" saw C.C.  Conversely, Nez claimed that Strenstrom and Clough were living together "every day," and that they raised C.C. together until July 2004.  The circuit court resolved this factual dispute adversely to Nez.  The circuit court's finding, which has not been challenged, treats Clough as the primary caretaker.  And more importantly, it is not disputed that during the first four years of C.C.'s life, Nez provided no support, and Nez's contact with C.C. was limited and infrequent.

[¶4.]        In 2004, Clough was charged with simple assault involving Strenstrom.[2]  Upon his arrest, Clough's mother took C.C. from Sioux Falls to temporarily care for her in Mission.  Although Nez then started two tribal court proceedings to obtain custody, both actions were dismissed for lack of jurisdiction.  C.C. was subsequently returned to Sioux Falls to again live with Clough.[3]  In January of 2005, Clough and C.C. moved to Rapid City.  Although the circuit court

---

1.    This point is also in dispute.  Clough testified "from that point on basically I would be taking care of her and raising her the best way I could."  Nez, however, claimed that she kept C.C. in Mission for nearly three months.

2.    This matter was resolved by Clough's plea to disorderly conduct and the entry of a protection order.

3.    During the time Clough's mother was caring for C.C. in Mission, Clough obtained a protection order prohibiting Strenstrom from having any contact with Clough or C.C.

found that Nez knew or could have determined Clough's new location, Nez had no contact with C.C. from December 2004 through March 2006.

[¶5.]    On September 21, 2006, Clough commenced this suit seeking legal and physical custody of C.C. Nez objected, denying that Clough was C.C.'s father. Nez also sought custody and requested court-ordered DNA tests to determine whether Clough was the biological father. Clough objected to the DNA test because the time for contesting paternity had expired under the statute of limitations. The circuit court ruled that this Court declared the statute of limitations unconstitutional[4] and ordered Clough to take a DNA test. The test indicated that Clough was not C.C.'s biological father.

[¶6.]    At the beginning of trial, Clough conceded that he was not the biological father and he withdrew his claim for custody. He did, however, request that the court award him visitation. After hearing the evidence, the circuit court awarded Nez custody. The court ruled that even though Clough did not dispute Nez's fitness, and even though Clough was not the biological father, visitation would be allowed because extraordinary circumstances justified visitation, namely: (1) Clough was C.C.'s primary caretaker since the time of her birth, (2) Clough and C.C. were closely bonded, (3) rupturing the connection between Clough and C.C.

---

4.    In 2004, a majority of this Court declared the statute of limitations in SDCL 25-8-59 unconstitutional. Dep't of Soc. Serv. *ex rel.* Wright v. Byer, 2004 SD 41, 678 NW2d 586 (*Byer I*). On rehearing, a majority held that declaration in abeyance until paternity tests were completed and the majority could better assess the statute's constitutionality. Dep't of Soc. Serv. *ex rel.* Wright v. Byer, 2005 SD 37, 694 NW2d 705 (*Byer II*). Because the *Byer II* dispute never returned to the Court, this Court's suspension of its unconstitutionality declaration is our last ruling on this issue.

would be extremely harmful and detrimental to C.C.'s welfare, and (4) Clough had provided for C.C.'s physical, emotional and other needs her entire life. The court concluded that "[p]ursuant to SDCL 25-5-29 and 25-5-30, extraordinary circumstances exist [that] require the relationship between [Clough] and [C.C.] be continued." The court awarded Clough visitation that included a full weekend each month, summer visitation, and alternate holidays.

[¶7.] Nez does not appeal the nature or extent of the visitation ordered. Instead, she appeals the award of *any* visitation, arguing that Clough failed to show the extraordinary circumstances required for a nonparent to obtain visitation. Nez also argues that the circuit court erred by failing to give deference to her wishes as the biological parent and by failing to apply the correct burden of proof. By notice of review, Clough appeals the circuit court's award of custody to Nez.

Decision

[¶8.] These arguments require our review of the statutes and decisional law governing a nonparent's right to custody and visitation of children. The arguments also require our review of the circuit court's extraordinary circumstances findings. We "review the trial court's findings of fact under the clearly erroneous standard [and] will overturn . . . findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." Miller v. Jacobsen, 2006 SD 33, ¶19, 714 NW2d 69, 76. "Statutory interpretation is a question of law, reviewed de novo." Scheller v. Faulkton Area Sch. Dist. No. 24-3, 2007 SD 42, ¶5, 731 NW2d 914, 916.

[¶9.] The Due Process Clause of the United States Constitution protects parents' rights to generally raise their children as they wish. Medearis v. Whiting, 2005 SD 42, ¶17, 695 NW2d 226, 230-31 (citing Troxel v. Granville, 530 US 57, 66, 120 SCt 2054, 2060, 147 LEd2d 49 (2000)) (noting, "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). Accordingly, a court may not presume that visitation with a nonparent is in the best interests of a fit parent's child. *Id.* ¶18, 695 NW2d at 231 (citing *Troxel*, 530 US at 69, 120 SCt at 2062). Further, the burden of disproving that a nonparent's visitation would be in the best interests of the child may not be placed upon a fit parent. *Id.* Ultimately, "[i]n order to grant a nonparent visitation rights with a minor child over the objections of a parent, a clear showing of gross misconduct, unfitness, or other extraordinary circumstances affecting the welfare of the child is required." D.G. v. D.M.K., 1996 SD 144, ¶46, 557 NW2d 235, 243 (citing Cooper v. Merkel, 470 NW2d 253, 255-56 (SD 1991)).

[¶10.] "'Extraordinary circumstances' denotes more than a simple showing that visitation would be in the child's best interest." *Id.* (citing Quinn v. Mouw-Quinn, 1996 SD 103, ¶13, 552 NW2d 843, 846). Although discussed in the analogous area of custody disputes, courts have identified a number of extraordinary circumstances that are sufficient to rebut the constitutional presumption of deference due parents.

> These circumstances must be only those that result in serious detriment to the child. They include the abandonment or persistent neglect of the child by the parent; the likelihood of serious physical or emotional harm to the child if placed in the

parent's custody; the extended, unjustifiable absence of parental custody; the abdication of parental responsibilities; the provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time; the existence of a bonded relationship between the child and the nonparent custodian sufficient to cause significant emotional harm to the child in the event of a change in custody; the substantial enhancement of the child's well-being while under the care of the nonparent; the extent of the parent's delay in seeking to reacquire custody of the child; the demonstrated quality of the parent's commitment to raising the child; the likely degree of stability and security in the child's future with the parent; the extent to which the child's right to an education would be impaired while in the custody of the parent; and any other circumstances that would substantially and adversely impact the welfare of the child.

Meldrum v. Novotny, 2002 SD 15, ¶58, 640 NW2d 460, 470-71 (Konenkamp, J. concurring in part) (citations omitted).

[¶11.]      Following *Meldrum,* these rebutting circumstances were codified in SDCL 25-5-29 and 25-5-30. SDCL 25-5-29 expressly authorizes nonparents to petition for custody or visitation if they have served as the child's primary caretaker, are closely bonded as a parental figure, or have otherwise formed a significant and substantial relationship. Even then, however, they may petition for custody or visitation only when the constitutional presumptions due parents are rebutted. The statute finally identifies a number of those rebutting circumstances.

> Except for proceedings under chapter 26-7A, 26-8A, 26-8B, or 26-8C, the court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South

Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:
(1) That the parent has abandoned or persistently neglected the child;
(2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
(3) That the parent has abdicated his or her parental rights and responsibilities; or
(4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

SDCL 25-5-29. In this case, the circuit court relied on rebutting presumption (4), which involves any extraordinary circumstance resulting in serious detriment to the child.

[¶12.] SDCL 25-5-30 defines that "serious detriment" element of subdivision (4). It identifies ten extraordinary circumstances that constitute the serious detriment necessary to interfere in parents' decisions regarding their children. Circumstances (3) and (4) are at issue in this case.

Serious detriment to a child may exist whenever there is proof of one or more of the following extraordinary circumstances:

(1) The likelihood of serious physical or emotional harm to the child if placed in the parent's custody;
(2) The extended, unjustifiable absence of parental custody;
(3) The provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time;
(4) The existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child in the event of a change in custody;
(5) The substantial enhancement of the child's well-being while under the care of a person other than the parent;
(6) The extent of the parent's delay in seeking to reacquire custody of the child;
(7) The demonstrated quality of the parent's commitment to raising the child;
(8) The likely degree of stability and security in the child's future with the parent;

-7-

(9) The extent to which the child's right to an education would be impaired while in the custody of the parent; or
(10) Any other extraordinary circumstance that would substantially and adversely impact the welfare of the child.

SDCL 25-5-30.

[¶13.]     Although both parties agreed at trial that SDCL 25-5-29 and 25-5-30 governed these proceedings, a number of Nez's appellate arguments implicitly question whether these extraordinary circumstances statutes apply in a visitation dispute.  Nez argues that the reference to "visitation" in SDCL 25-5-29 only relates to standing, suggesting that the remaining language in SDCL 25-5-29 and 30 does not govern the proof necessary to award visitation.  If applicable, these statutes dispose of a number of Nez's arguments.  We therefore first consider whether the statutes apply to a visitation dispute.

[¶14.]     SDCL 25-5-29 and SDCL 25-5-30 were enacted in 2002, as a part of 2002 Sess Laws ch 126, "An Act to revise and modify certain provisions relating to the award of child custody and to declare an emergency."  Although this title only mentions the word "custody," three of the Act's five substantive sections reflect that it was intended to govern both custody and visitation.  *See* SDCL 25-5-29 (SL 2002, ch 126, §1) (providing that a nonparent may petition any court of competent jurisdiction "for custody or visitation" under certain enumerated circumstances); SDCL 25-5-31 (SL 2002, ch 126, §3) (providing that nothing in SDCL 25-5-29 creates any right on behalf of a stepparent to seek "custody or visitation" with certain stepchildren); and SDCL 25-5-32 (SL 2002, ch 126, §4) (providing that if a court determines a person other than a parent *should be awarded* "custody or visitation," the court need not terminate either parent's parental rights over the

child). There are also obvious reasons why the three remaining provisions of the Act did not expressly refer to visitation.[5] Because the relevant substantive provisions expressly contemplate an award of custody or visitation, we conclude that the Legislature intended this Act to cover both.

[¶15.] Moreover, even if the statutes were not expressly intended to govern visitation, we see no reason why the common law regarding extraordinary circumstances, as expressed in *Meldrum*, *supra*, and later codified in these statutes, should not apply to both custody and visitation. As we have previously noted, "[t]he right of visitation derives from the right of custody and is controlled by the same legal principles." *Cooper*, 470 NW2d at 255. Therefore, even if the statutes did not expressly apply, the common-law legal principles codified therein are the type of extraordinary circumstances necessary to satisfy due process concerns. Consequently, we review the circuit court's decision under SDCL 25-5-29 and 25-5-30 to determine whether Clough proved one or more of those extraordinary circumstances necessary for a nonparent to obtain visitation.

---

5.    Although the three remaining provisions do not expressly mention visitation, they either implicitly reference visitation or that subject is not relevant to that specific section's purpose. *See* SDCL 25-5-30 (SL 2002, ch 126, §2) defining the serious detriment referred to in SDCL 25-5-29, which expressly refers to both custody and visitation; SDCL 25-5-33 (SL 2002, ch 126, §5), which only deals with the issue of child support should *custody* be given to a nonparent, a subject not at issue in a visitation dispute. Finally, based upon the language and time of enactment, it is obvious that this Act was adopted in response to this Court's custody decision in *Meldrum*. *See supra* ¶11. Because the Legislature apparently wished the Act to apply to that pending custody proceeding, the Legislature adopted SDCL 25-5-34 (SL 2002, ch 126, §6), which provided for the Act's immediate application to pending custody proceedings.

[¶16.]     The circuit court's decision was predicated on findings of fact all emanating from the undisputed circumstance that Nez had never supported or been the caretaker of her child. Thus, there can be no substantial dispute with the court's finding that Clough "served as the primary caretaker for the minor child since the time of her birth until the time of hearing regarding custody and visitation on May 1, 2007," a period of four years. This finding alone was sufficient to rebut Nez's presumptive rights as a parent under SDCL 25-5-29(4) and 25-5-30(3) (extraordinary circumstances causing serious detriment to a child exist when the child's needs have been provided by a nonparent over a significant period of time). As Justice Konenkamp observed in *Meldrum*, "extraordinary circumstances . . . include . . . the provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time[.]" 2002 SD 15, ¶58, 640 NW2d 460, 470-71 (Konenkamp, J., concurring in part).[6]

[¶17.]     There is also no real dispute with the court's finding that Clough "has closely bonded as a parental figure with [C.C.] and has otherwise formed a significant and substantial relationship with [C.C.]. More importantly, the child has bonded with [Clough]." Clough testified that C.C. calls him "dad," and he and

---

6.     A similar factual situation was presented in *Meldrum*, wherein Justice Konenkamp noted:

> The child ha[d] been in [the nonparent's] custody for more than eight years. Much of that time the [parent] acquiesced in the situation. There were many years where there was no contact between [parent] and [child].

2002 SD 15, ¶59, 640 NW2d at 471.

C.C. "have a very good father/daughter relationship. We love doing things. . . . We're real close." Clough further testified that "if she were to lose me, I don't know what her reaction would be. I think she would probably be pretty pained. It would be pretty detrimental to her[.]" Thus, this finding further, independently rebutted Nez's presumptive rights under SDCL 25-5-29(4) and 25-5-30(4) (extraordinary circumstances exist when there is "[t]he existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child").

[¶18.] Although Nez points out that no *expert* testified that C.C. would actually suffer a serious detriment without visitation, expert testimony is not required to establish the probability of emotional harm to a child. That "assessment can be made within ordinary experience, no expert is necessary." Laurie S. v. Superior Court, 31 CalRptr2d 506, 510 (CalCtApp 1994). Nez's argument also fails to acknowledge that the circuit court gave her legal and physical custody, and she conceded at trial that forbidding visitation "would put [C.C.] through . . . mental stress." Under these circumstances, we affirm the circuit court's finding that rupturing the connection between Clough and C.C. would be extremely harmful and detrimental to C.C.'s welfare.

[¶19.] Nez next contends that a number of the circuit court's statements reflect that it did not place the burden on Clough to prove that a denial of visitation would result in serious detriment to C.C.; rather, the court incorrectly assumed that visitation would be in C.C.'s best interest. For example, Nez points out that at the beginning of trial, the court stated:

> And the question is, can somebody establish to me that the child will not be harmed by the sudden and arbitrary—seemingly arbitrary decision that you can never see the person you have regarded as your father for three (sic) years?

We note, however, that the court's question was rhetorical and clearly linked to the undisputed factual circumstance that the child had formed a parental relationship with Clough because he, rather than Nez, had provided the child's care and support for her entire life. Consequently, when viewed in context, it is apparent that the court did not make improper assumptions or apply improper burdens. Indeed, immediately after making this statement, the circuit court clearly expressed its correct understanding of the proper allocation of burdens of proof that it was going to apply at trial. Immediately after the foregoing statement, the following exchange occurred:

> Nez's counsel: "Clough . . . has the burden of showing extraordinary circumstances[.]"
> The court: "I agree."
> Nez's counsel: "That's where we're at."
> The court: "I agree absolutely."

[¶20.]     Nez also notes that after Clough testified (and *before* Nez testified), the court stated:   "And the question is, she's grown up with [Clough as] her daddy. And you know, you got a mountain to climb to get me to cold terminate any contact that he's going to have with the child under those circumstances." The court further stated before Nez testified: "Somebody is going to have to show me, given the history we have, as to why I should terminate his relationship with the child. And I can't think of a reason at this point." Again, however, these statements were expressly qualified by the "history" and "circumstances" of Clough's bonded relationship and Nez's undisputed failure to support or care for her child, which

-12-

rebutted the presumption of parental fitness. *See* SDCL 19-11-1 (Rule 301) (providing that when substantial, credible evidence has been introduced to rebut a presumption, it shall disappear from the action or proceeding). Therefore, under the undisputed circumstances and history of this case, Clough had satisfied his burden of rebutting the parental presumption, and the circuit court appropriately began to focus on the best interests of the child. For the same reason, the circuit court's statements do not indicate that it failed to follow the constitutional and statutory presumptions and burden of proof applicable in such cases.[7]

[¶21.] Nez next argues the circuit court gave no deference or special weight to her determination that it was in C.C.'s best interests to deny or limit Clough's visitation. *See Troxel*, 530 US 57, 120 SCt at 2062, in which the Supreme Court required that a trial court "must accord at least some special weight to the parent's

---

7. Nez argues the circuit court made other statements indicating that it misplaced the burden when it ruled from the bench. When ruling, the court stated:

> We come to the position . . . that for virtually four years, [C.C] is raised by the person she believes to be her father . . . . [H]e filled the role and that is the factor that is of concern to me. I cannot conceive of any way that terminating that role is of benefit to [C.C.].

The court also stated:

> My findings of fact are this: number one, that [Nez] [is] the mother. Number two [Clough] [is] not the father. Number three, [Clough] [has] acted in the parental role for virtually all of the child's life. There is no evidence before me that that role was harmful to the child[.]"

(continued . . .)

own determination." *See also Medearis*, 2005 SD 42, ¶22, 695 NW2d at 232, in which this Court acknowledged *Troxel's* holding that "some 'special weight' must be given the parent's own determination." Nez points out there was no contention that she was an unfit parent, and therefore, her determination concerning Clough's visitation should have been given deference and special weight.

[¶22.]     Nez's argument is misplaced under the facts of this case. Although the special weight and presumption discussed in *Troxel* and *Medearis* is applicable in situations involving a fit parent, the presumption disappears in situations where there are also extraordinary circumstances rebutting that parent's presumptive right to make custody/visitation decisions with respect to his or her child. The language of *Troxel* clearly reflects that a fit parent is entitled to that deference only when there are no extraordinary circumstances. When, however, as in this case, a parent fails to care for his or her child, extraordinary circumstances exist and the presumption disappears:

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.
>
> *Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit),* there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best

_____

(. . . continued)
     Like the statements discussed above, Clough's burden of rebutting the parental presumption had been satisfied, and when viewed in context, the circuit court was correctly focusing on the best interests of the child.

decisions concerning the rearing of that parent's children.

*Troxel*, 530 US at 68-69, 120 SCt at 2061 (citing Parnham v. J.R., 442 US 584, 602, 99 SCt 2493, 2504, 61 LE2d 101 (alternations in original)). Therefore, deference and special weight must be given only when a fit parent has adequately cared for his or her children, *i.e.,* when no extraordinary circumstances apply. When extraordinary circumstances have been shown, the presumption disappears. *See* SDCL 19-11-1 (Rule 301).

[¶23.]     We have recognized this qualification in both visitation and custody contexts. After discussing the usual prerequisite of unfitness required to rebut the presumption in custody proceedings, we explicitly noted that "extraordinary circumstances affecting the welfare of the children can . . . operate to defeat the custody preference of a parent." *In re* Guardianship of Sedelmeier, 491 NW2d 86, 88 (SD 1992). And, in the visitation context, we have noted that "[i]n order to grant a nonparent visitation rights with a minor child over the objections of a parent, a clear showing of gross misconduct, unfitness, *or* other extraordinary circumstances affecting the welfare of the child is required." *D.M.K.,* 1996 SD 144, ¶46, 557 NW2d at 243 (emphasis added). Therefore, although Nez started with a parental presumption requiring deference and special weight to her decisions, that deference disappeared once Clough established the extraordinary circumstance that Nez had effectively never cared for or supported her child. Under those circumstances, Nez was no longer entitled to the special deference normally afforded a fit parent, and the circuit court's focus on the best interests of the child was appropriate.

[¶24.] Nez also fails to acknowledge that the circuit court had serious questions about Nez's credibility. Although her testimony about Clough's fitness and Nez's wishes regarding visitation would ordinarily raise concerns, the circuit court rejected these concerns expressly finding that Nez's assertions regarding Clough "raise serious questions about [Nez's] credibility and clearly indicate a willingness to 'stretch the truth' if necessary." Nez argues that this finding is erroneous because the court based its finding on *counsel's* cross-examination of Clough regarding Clough's alleged criminal history -- allegations Nez could not prove at trial.[8] Nez argues that "questions by *counsel* are certainly no evidence at all as to his client's credibility as a witness." Counsel's questions are not, however, the extent of the record regarding Nez's lack of credibility.

[¶25.] In Nez's pro-se answer to Clough's complaint, which she signed, she made the same or equivalent allegations as those involved in cross-examination. Those allegations seriously and adversely reflected on *Nez's* credibility. Furthermore, regardless of Nez's credibility, the circuit court effectively deferred to Nez's determination of appropriate visitation because the court awarded Clough the

---

8. The court found:

> During the course of the trial, [Clough] was repeatedly questioned about voluntary commitments, criminal offenses in other states, protection orders against him, and the like. Those questions, upon review of medical and criminal records, were without meaningful factual basis and [Clough's] responses to those questions were candid and proven correct. There is no reason to seriously question his credibility, though the court must always be alert for the warping of memory and observations by the emotional prism associated with domestic/custody disputes.

roughly equivalent amount of visitation that Nez deemed appropriate absent a court order.

[¶26.] Nez finally argues that the circuit court erred in considering the effect of the termination of contact between Clough and C.C., claiming that she never testified she would completely terminate all visitations between C.C. and Clough. At the beginning of the trial, however, Nez's counsel specifically informed the court that Nez objected to "any legally enforceable rights of visitation." Concededly, during trial, Nez testified:

> Q: If the court does not give [Clough] legal enforceable visitation rights, would you do it – do you intend to allow [Clough] to have some contact and visitations with [C.C.]?
> A: Yes.
> Q: Under what circumstances?
> A: Nothing a lot. I was just thinking like one weekend a month. That type of deal. One week in the summer.

But, Nez ultimately clarified:

> Q: You want to make that decision *rather than the court*?
> A: Yes.

And, at oral argument Nez's counsel reiterated, "[t]he issue here is who's going to make the decision, a fit parent or the court?" Counsel was then asked by this Court: "So . . . she'd be coming to the South Dakota Supreme Court even if the judge had awarded him one day a year, she'd still be here on principal saying, I want to decide when . . . ." Counsel replied, "That very well may be the case." Thus, the record does not support Nez's argument that no court order was necessary to facilitate visitation with the only parent C.C. has ever known. We affirm the circuit court's order of visitation.

-17-

Notice of Review:  Clough's Request for Custody

[¶27.]     By notice of review, Clough appeals the circuit court's award of custody to Nez.  Clough argues that under the best interest test, he should be awarded custody.  Clough points out that under the paternity acknowledgment signed by both parties, he is the presumptive father.  Because Nez did not challenge paternity within the time allowed by the statute of limitations,[9] and because Clough contends the statute is constitutional, he argues the DNA test was improper.  Absent the DNA test, Clough argues he is the presumptive father who, under the acknowledgment of paternity, is entitled to seek custody under the lesser best interest test.  Clough requests a remand for a new custody determination in his favor based solely on C.C.'s best interests.

[¶28.]     At the beginning of trial, however, Clough expressly withdrew his request for custody of C.C.  And, at the conclusion of the trial, he neither requested the circuit court to award custody nor proposed findings and conclusions requesting such an award.  Because Clough did not seek custody at trial, he may not raise the issue for the first time on appeal.  *See* Action Mech., Inc. v. Deadwood Historic Pres.

---

9.     SDCL 25-8-59 provides in relevant part:

>    Any action contesting a rebuttable presumption of paternity  . . .  shall be commenced in circuit court either *sixty days* after the creation of the presumption of paternity or the date of any administrative or judicial proceedings relating to the child including proceedings to establish a support obligation[.]

>    (Emphasis added.)   Therefore, in this case, Nez was required to commence an action to challenge Clough's paternity within sixty days of June 10, 2003.

Comm'n, 2002 SD 121, ¶50, 652 NW2d 742, 755 (providing, "[a]n issue not raised at the trial court level cannot be raised for the first time on appeal").

[¶29.]     Affirmed.

[¶30.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.