#25530-r-JKM
**2010 S.D. 104**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LEON R. FEIST and
BECKY LEMIEUX-FEIST,                    Petitioners and Appellees,

v.

ZACHARY E. LEMIEUX-FEIST,               Respondent,
and
ASHLEY FOUSEK,                          Respondent and Appellee,
and
STATE OF SOUTH DAKOTA,                  Intervenor and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MERTON B. TICE, JR.
Judge

* * * *

DEBRA D. WATSON of                      Attorney for petitioners
Watson Law Office, P.C.                 and appellees Feist &
Rapid City, South Dakota                Lemieux-Feist.


COURTNEY R. STOTTLER
PATRICK M. GINSBACH of
Farrell, Farrell and Ginsbach, P.C.     Attorneys for respondent
Hot Springs, South Dakota               and appellee Fousek.


MARTY J. JACKLEY
Attorney General


KIRSTEN E. JASPER
Assistant Attorney General              Attorneys for intervenor
Pierre, South Dakota                    and appellant.

* * * *

ARGUED ON OCTOBER 5, 2010


OPINION FILED **12/29/10**

#25530

MEIERHENRY, Justice

[¶1.]        We must decide in this case whether South Dakota's third party custody statutes are constitutional.  The two statutes in question are SDCL 25-5-29 and 25-5-30.  The circuit court found these statutes unconstitutional because they do not specifically require "a finding of parental unfitness prior to awarding custody to a non-parent."  We hold that the statutes can be construed constitutionally, and therefore, the circuit court must be reversed.

## FACTS

[¶2.]        Zachary Lemieux-Feist (Father) and Ashley Fousek (Mother) had a daughter (A.L.F.).  Father and Mother had a strained relationship that dissolved after A.L.F. was born.  Leon Feist and Becky Lemieux-Feist (Grandparents) filed a petition against Father and Mother to gain custody of A.L.F. under SDCL ch. 25-5. Before the circuit court decided whether to grant Grandparents' petition, an agreement was reached between Father, Mother, and Grandparents.  This agreement resulted in joint legal custody between Father and Mother, with primary physical custody with Mother and visitation for Grandparents.  The circuit court approved this agreement.  Grandparents later filed another petition to gain custody of A.L.F.  Mother filed a motion to dismiss this petition, arguing that SDCL 25-5-29 and 25-5-30 are unconstitutional.  The circuit court granted Mother's motion to dismiss.  The circuit court declared these two South Dakota statutes unconstitutional because they "contain no requirement for a finding of parental unfitness prior to awarding custody to a non-parent."  The circuit court based its ruling on *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)

(plurality opinion). The circuit court did not enter findings of fact or consider whether the statutes at issue were capable of constitutional interpretation or application.

## ANALYSIS

[¶3.]    This Court reviews "a challenge to the constitutionality of a statute [ ] de novo." *Currey v. Currey*, 2002 S.D. 98, ¶ 7, 650 N.W.2d 273, 276 (citations omitted). Therefore no deference is given to the circuit court. *In re S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 10, 781 N.W.2d 213, 218. If a statute "can be construed so as not to violate the [C]onstitution, we will adopt such a construction." *State v. Page*, 2006 S.D. 2, ¶ 73, 709 N.W.2d 739, 763 (citations omitted). The party challenging the constitutionality of a statute bears a heavy burden: "There is a strong presumption that the laws enacted by the [L]egislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the [C]onstitution." *Burlington N. R.R. Co. v. Green*, 2001 S.D. 48, ¶ 18, 624 N.W.2d 826, 831 (citations omitted).

[¶4.]    SDCL 25-5-29 and 25-5-30 prescribe the circumstances permitting non-parents to seek visitation or custody of a child. *See S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 16, 781 N.W.2d at 220. These statutes require that the person seeking custody have a relationship with the child as "a primary caretaker" or "a parental figure" or that person and the child have "otherwise formed a significant and substantial relationship." SDCL 25-5-29. These statutes also establish that "a parent's presumptive right to custody" may be rebutted only by proof of abandonment or neglect, surrender, abdication of parental rights, or "other

-2-

extraordinary circumstances [ ] result[ing] in serious detriment to the child." *Id.*

SDCL 25-5-29, in its entirety, provides as follows:

> Except for proceedings under chapter 26-7A, 26-8A, 26-8B, or 26-8C, the court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:
> (1) That the parent has abandoned or persistently neglected the child;
> (2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
> (3) That the parent has abdicated his or her parental rights and responsibilities; or
> (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

SDCL 25-5-30 further defines the extraordinary circumstances that constitute

serious detriment to a child:

> Serious detriment to a child may exist whenever there is proof of one or more of the following extraordinary circumstances:
> (1) The likelihood of serious physical or emotional harm to the child if placed in the parent's custody;
> (2) The extended, unjustifiable absence of parental custody;
> (3) The provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time;
> (4) The existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child in the event of a change in custody;
> (5) The substantial enhancement of the child's well-being while under the care of a person other than the parent;

> (6)　The extent of the parent's delay in seeking to reacquire custody of the child;
>
> (7)　The demonstrated quality of the parent's commitment to raising the child;
>
> (8)　 The likely degree of stability and security in the child's future with the parent;
>
> (9)　 The extent to which the child's right to an education would be impaired while in the custody of the parent; or
>
> (10)　Any other extraordinary circumstance that would substantially and adversely impact the welfare of the child.

The circuit court reviewed these two statutes in light of *Troxel* and held them to be constitutionally inadequate because they do not specifically require a finding of parental unfitness.

[¶5.]　*Troxel* involved a Washington visitation statute that permitted "any person" to petition for visitation rights "at any time." 530 U.S. at 61, 120 S.Ct. at 2057-58. The Washington Supreme Court determined that the statute was unconstitutional because "parents have a right to limit visitation of their children with third persons, and that between parents and judges, the parents should be the ones to choose whether to expose their children to certain people or ideas." *Id.* at 63, 120 S.Ct. at 2059 (citations omitted).

[¶6.]　The *Troxel* plurality, in affirming the Washington Supreme Court, recognized that parents have an interest in the care, custody, and control of their children. *Id.* at 65, 120 S.Ct. at 2060 (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (holding that the liberty interest protected by the Due Process Clause includes a parent's right to "establish a home and bring up children" and to "control the education of their own [children].")); *Pierce v. Soc. of Sisters*, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (recognizing

parents' liberty interests to "direct the upbringing and education of children under their control."); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ("It is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the State can neither supply nor hinder."). *Troxel* also recognized that the relationship between "parent and child is constitutionally protected" under the Fourteenth Amendment Due Process Clause. *Id.* at 66, 120 S.Ct. at 2060 (citing *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978)). A majority of the Court recognized parents' fundamental right to direct the upbringing of their children. *See id.* at 66, 120 S.Ct. at 2060; *Id.* at 77, 120 S.Ct. at 2066 (Souter, J., concurring); *Id.* at 80, 120 S.Ct. at 2068 (Thomas, J., concurring); *Id.* at 86, 120 S.Ct. at 2071 (Stevens, J., dissenting).

[¶7.]        Unlike the circuit court, we do not read *Troxel* as specifically requiring a finding of parental unfitness in third party visitation or custody cases. As we have noted before, *Troxel* only requires that "special weight" be given to a fit parent's determinations regarding her children. *See id.* at 70, 120 S.Ct. at 2062. *See, e.g., In re A.L. and S.L.-Z.*, 2010 S.D. 33, ¶ 20, 781 N.W.2d 482, 487 (recognizing *Troxel's* "special weight" requirement); *Clough v. Nez*, 2008 S.D. 125, ¶ 21, 759 N.W.2d 297, 306 (same).

[¶8.]        We recently applied *Troxel* to South Dakota's grandparent visitation statutes. *See A.L.*, 2010 S.D. 33, ¶ 20, 781 N.W.2d at 487. As noted in *Clough*, the application of *Troxel* to visitation statutes also applies to custody statutes. As such, our reasoning in *A.L.* applies here. In *Clough*, this Court noted that "[t]he right of

visitation derives from the right of custody and is controlled by the same legal principles." *Clough*, 2008 S.D. 125, ¶ 15, 759 N.W.2d at 304 (citing *Cooper v. Merkel*, 470 N.W.2d 253, 255 (S.D. 1991)). Therefore the same legal principles applied in *A.L.* apply to South Dakota's third party custody statutes (SDCL 25-5-29 and 25-5-30). *See Clough*, 2008 S.D. 125, ¶ 15, 759 N.W.2d at 304.

[¶9.]        In *A.L.*, we found South Dakota's grandparent visitation statutes to be facially constitutional but unconstitutionally applied. 2010 S.D. 33, ¶ 19, 781 N.W.2d at 487.[1] Constitutional application requires "three pieces from *Troxel*" as follows:

> First, parents have a "liberty interest" in the rearing of their children. Fit parents are presumed to act in the best interest of their children. Second, given a parent's liberty interest in childrearing, the [S]tate will "normally" have no reason to question parental decisions. *Troxel* emphasized that its ruling did not rest on a fit parent's "normal" right to be free of [S]tate intervention in parenting decisions, but instead rested on a "combination of . . . factors." Third, the Court established a "special-weight" requirement. The trial court in *Troxel* failed to

---

1.    In South Dakota, grandparent visitation is controlled, in part, by SDCL 25-4-52, which provides:

> The circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if the visitation is in the best interests of the grandchild and:
> (1)    If the visitation will not significantly interfere with the parent- child relationship; or
> (2)    If the parent or custodian of the grandchild has denied or prevented the grandparent reasonable opportunity to visit the grandchild.
> The circuit court shall issue any orders necessary to enforce or to protect visitation rights granted pursuant to this section.
> As used in this section, the term grandparents includes great-grandparents.

give "*at least some special weight*" to the mother's determination of her daughters' best interest.

*Id.* ¶ 20, 781 N.W.2d at 488 (emphasis added). We said, "[i]n light of *Troxel*, the best interests determination cannot be left solely to the [circuit] court's discretion without considering and giving deference to a fit parent's decision." *Id.* After applying *Troxel*, we ultimately reversed the circuit court's award of visitation to grandparents because "[n]othing in the circuit court's written findings or conclusions indicated that the court gave any *special weight* to the parents' decision" regarding visitation. *Id.* ¶ 16, 781 N.W.2d at 486 (emphasis added). But we declared that *Troxel* requires that "special weight" be given to fit parents' determinations concerning their children. *See id.*[2]

[¶10.] In *Clough,* a non-parent sought visitation rights under the statutes now challenged (SDCL 25-5-9 and 25-5-30). *See* 2008 S.D. 125, ¶ 6, 759 N.W.2d at 301. Although the child's mother did not directly challenge the constitutionality of SDCL 25-5-29 and 25-5-30 in *Clough,* she claimed that *Troxel* required the trial court to give "deference or special weight to her determinations" regarding the child. 2008 S.D. 125, ¶ 21, 759 N.W.2d at 306. In that case, Keith Clough sought visitation with a child he allegedly fathered. Clough claimed that he provided care during the child's first four years of life. DNA evidence, however, proved the child was not his biological child. *Id.* In determining whether Clough should have been granted visitation, we recognized that "the special weight and presumption

---

2. In *A.L.*, we declined to address how *Troxel*'s standards apply when the parent is unfit. *See* 2010 S.D. 33, ¶ 23 n.6, 781 N.W.2d at 489 n.6 ("We express no opinion on how [*Troxel's*] standards should be applied in a grandparent visitation proceeding where the objecting parent is unfit[.]").

discussed in *Troxel* . . . [wa]s only applicable in situations involving a fit parent, [and that] presumption disappears in situations where there are also extraordinary circumstances rebutting that parent's presumptive right[.]" *Id.* ¶ 22, 759 N.W.2d at 306. This Court further stated that "to adequately protect the natural parent's fundamental liberty interest in the custody of her children, extraordinary circumstances must denote more than a simple showing of the children's best interests." *S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 21, 781 N.W.2d at 223 (citing *Clough*, 2008 S.D. 125, ¶ 10, 759 N.W.2d at 302).

[¶11.]    Based on the presence of extraordinary circumstances in *Clough*, this Court affirmed the trial court's determination that Clough be awarded visitation with the child. *Clough*, 2008 S.D. 125, ¶ 23, 759 N.W.2d at 307. In analyzing the issue and interpreting SDCL ch. 25-5, we concluded that "extraordinary circumstances" justified not giving the child's mother the "special deference normally afforded a fit parent." *Id.* ¶ 23. We interpreted the language of *Troxel* to mean that "deference and special weight must be given only when a fit parent has adequately cared for his or her children, i.e., when no extraordinary circumstances apply. When extraordinary circumstances have been shown, the presumption disappears." *Id.* ¶ 22, 759 N.W.2d at 306-07. *See A.L.*, 2010 S.D. 33, ¶ 20, 781 N.W.2d at 487.

[¶12.]    Although we do not interpret *Troxel* to require a finding of parental unfitness, we note that parental unfitness is implicit in many of the circumstances the South Dakota Legislature identified in SDCL 25-5-29 and 25-5-30. *See* SDCL 25-5-29 (1-3). *See also* SDCL 25-5-30 (1-3) & (6-9). Even so, the Legislature has

provided a mechanism for extraordinary circumstances to justify awarding custody or visitation to a third party over a fit parent's objections. SDCL 25-5-29(4); SDCL 25-5-30.

[¶13.] Our past cases demonstrate that SDCL 25-5-29 and 25-5-30 can be interpreted and applied without offending the constitutional protections outlined in *Troxel*. SDCL 25-5-29 requires that "it [be] presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent." Only when parental unfitness or "extraordinary circumstances" are present may this presumption be rebutted. *See* SDCL 25-5-29 ("A parent's presumptive right to custody of his or her child may be rebutted by proof: . . . (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child."). SDCL 25-5-29 and 25-5-30 can be construed constitutionally because these statutes require that "special weight" be given to a fit parent's decisions regarding her child. *See Troxel*, 530 U.S. at 70, 120 S.Ct. at 2062. *See also Page*, 2006 S.D. 2, ¶ 73, 709 N.W.2d at 763. As a result, Mother has failed to meet her burden of demonstrating that SDCL 25-5-29 and 25-5-30 "clearly, palpably and plainly" violate the Constitution. *See Green*, 2001 S.D. 48, ¶ 18, 624 N.W.2d at 831.[3]

[¶14.] Reversed.

[¶15.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.

---

3. Grandparents and Mother have requested appellate attorney's fees. Based on this record, we conclude that each party should be responsible for their own attorney's fees. *See Lovejoy v. Lovejoy*, 2010 S.D. 39, ¶ 17, 782 N.W.2d 669, 674.