#26129-a-SLZ

**2012 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KEITH BEACH and ELLEN BEACH,                    Plaintiffs and Appellants,

    v.

DAVID ALLEN COISMAN,                                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WALLY EKLUND
Judge

\* \* \* \*

CATHERINE E. MATTSON
Rapid City, South Dakota                    Attorney for plaintiffs and
    appellants.


TERRI L. WILLIAMS of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                    Attorneys for defendant and
    appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 19, 2012

OPINION FILED **05/02/12**

#26129

ZINTER, Justice

[¶1.]     This case involves a grandchildren visitation disagreement between a father and maternal grandparents.  The grandparents were unhappy with the father's restrictions on visitation, and they filed a petition for a broader visitation plan.  At the close of the grandparents' case-in-chief, the circuit court granted father's motion for a judgment as a matter of law and motion for attorney's fees.  We affirm.

*Facts and Procedural History*

[¶2.]     David and Becky Coisman married and lived in Rapid City.  Becky's parents, Ellen and Keith Beach, lived on a ranch in Montana.  In the summer of 2006, Becky gave birth to twins.  The twins were born prematurely, and Ellen and Keith helped David and Becky care for the twins during their infancy.  Ellen and Keith continued to have substantial contact with the twins over the next few years.

[¶3.]     In April 2009, Becky died.  After Becky's death, David arranged for the twins' continued contact with Ellen and Keith, including visitation at Ellen and Keith's Montana ranch.  After these visits, David began to feel that Ellen and Keith had insufficient concern for the twins' exposure to heavy equipment and recreational vehicles at the ranch.  David was also concerned about the twins' supervision when they were alone with Ellen and Keith.

[¶4.]     In December 2009, David allowed the children to travel to Montana with Ellen for a three-day visit.  Ellen and Keith kept the children an extra ten days without David's approval.  Following this incident, David advised Ellen and Keith that the children would not be allowed to return to Montana.  Instead, he

-1-

encouraged Ellen and Keith to visit the twins in South Dakota. In February 2010, Ellen and Keith visited the twins in Rapid City. However, from March 2010 to September 2010, no visitation occurred.

[¶5.] In August 2010, Ellen and Keith filed a petition for visitation. Ellen and Keith requested, among other things, to have the children in Montana one weekend per month during the children's school year, one week during Christmas break, and four consecutive weeks during the summer. Ellen and Keith also requested that David pay one-half the cost of transportation associated with the visits. David did not accept Ellen and Keith's requested visitation plan. However, he did allow visitation in Rapid City throughout the court proceedings.

[¶6.] David moved for a directed verdict (judgment as a matter of law) and an award of attorney's fees at the end of Ellen and Keith's case-in-chief. The circuit court granted both motions, and Ellen and Keith appeal.

*Decision*

*Grandparent Visitation*

[¶7.] Ellen and Keith argue that the circuit court erred as a matter of law in applying SDCL 25-4-52,[1] the grandparent visitation statute, to resolve this dispute.

---

1.   SDCL 25-4-52 provides in relevant part:

> The circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if the visitation is in the best interests of the grandchild and:
> > (1) If the visitation will not significantly interfere with the parent-child relationship; or

(continued . . .)

#26129

Ellen and Keith contend that SDCL 25-4-52 is inapplicable because that statute is located in a chapter of the South Dakota code on "Divorce and Separate Maintenance" and this proceeding was not part of a divorce. Ellen and Keith assert that the circuit court should have applied SDCL 25-5-29,[2] a general nonparent visitation and custody statute.

[¶8.] Even if Ellen and Keith's petition for visitation should have been considered under SDCL 25-5-29, they could not have prevailed unless they rebutted David's presumptive parental right to the custody and control of his children.

_____

(. . . continued)
> (2) If the parent or custodian of the grandchild has denied or prevented the grandparent reasonable opportunity to visit the grandchild.

2. SDCL 25-5-29 provides:

> Except for proceedings under chapter 26-7A, 26-8A, 26-8B, or 26-8C, the court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:
>> (1) That the parent has abandoned or persistently neglected the child;
>> (2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
>> (3) That the parent has abdicated his or her parental rights and responsibilities; or
>> (4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

-3-

SDCL 25-5-29 generally authorizes any nonparent "to petition for custody or visitation if they have served as the child's primary caretaker, are closely bonded as a parental figure, or have otherwise formed a significant and substantial relationship." *Clough v. Nez*, 2008 S.D. 125, ¶ 11, 759 N.W.2d 297, 302. But SDCL 25-5-29 also provides: "It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South Dakota Supreme Court." Therefore, before a court may consider granting visitation, the nonparent must rebut the constitutional presumptions that are due a parent. *Clough*, 2008 S.D. 125, ¶ 11, 759 N.W.2d at 302. Rebutting those constitutional presumptions requires a showing of parental unfitness or other extraordinary circumstances. *Feist v. Lemieux-Feist*, 2010 S.D. 104, ¶ 13, 793 N.W.2d 57, 62-63 ("Only when parental unfitness or 'extraordinary circumstances' are present may this presumption be rebutted."); *Clough*, 2008 S.D. 125, ¶ 9, 759 N.W.2d at 302 ("[I]n order to grant a nonparent visitation rights with a minor child over the objections of a parent, a clear showing of gross misconduct, unfitness, or other extraordinary circumstances affecting the welfare of the child is required."). SDCL 25-5-29 and 25-5-30[3] have codified some of those circumstances that may be sufficient to rebut a parent's presumptive right to custody and to control visitation.

---

3.  SDCL 25-5-30 supplements SDCL 25-5-29(4) by providing circumstances which suggest serious detriment to a child. Serious detriment may be shown by proving the existence of the following:

> (1) The likelihood of serious physical or emotional harm to the child if placed in the parent's custody;

(continued . . .)

[¶9.] Ellen and Keith did not present any evidence rebutting David's presumptive parental right to control the custody and visitation of his children. Ellen and Keith did not claim that David was unfit, and they presented no evidence of extraordinary circumstances that would result in serious detriment to the children. Indeed, they acknowledge that David is not denying all visitation. Further, their "extraordinary circumstances" argument is facially insufficient. They merely argue that David's restriction would "impact the twins."

[¶10.] Ultimately, Ellen and Keith offered no evidence below, and do not explain on appeal, how David's restrictions are "extraordinary circumstances" resulting in "serious detriment" to the twins within the meaning of SDCL 25-5-29(4) and 25-5-30. Therefore, even if the circuit court had applied those statutes, Ellen

---

(. . . continued)

(2) The extended, unjustifiable absence of parental custody;

(3) The provision of the child's physical, emotional, and other needs by persons other than the parent over a significant period of time;

(4) The existence of a bonded relationship between the child and the person other than the parent sufficient to cause significant emotional harm to the child in the event of a change in custody;

(5) The substantial enhancement of the child's well-being while under the care of a person other than the parent;

(6) The extent of the parent's delay in seeking to reacquire custody of the child;

(7) The demonstrated quality of the parent's commitment to raising the child;

(8) The likely degree of stability and security in the child's future with the parent;

(9) The extent to which the child's right to an education would be impaired while in the custody of the parent; or

(10) Any other extraordinary circumstance that would substantially and adversely impact the welfare of the child.

SDCL 25-5-30.

and Keith were not entitled to relief. "Fit parents are presumed to act in the best interests of their children." *In re A.L.*, 2010 S.D. 33, ¶ 20, 781 N.W.2d 482, 487 (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)). A court must give "at least some special weight" to a fit parent's decision regarding visitation. *Troxel*, 530 U.S. at 70, 120 S. Ct. at 2062. "[T]he decision whether . . . an intergenerational relationship [between grandparents and grandchildren] would be beneficial in any specific case is for the parent to make in the first instance." *Id.*

[¶11.] Although the *Troxel* plurality "did not declare that grandparent visitation should never be allowed when a fit parent makes a decision to deny or restrict visitation," the plurality recognized that "only in limited circumstances should a state intervene in a fit parent's decision." *In re A.L.*, 2010 S.D. 33, ¶ 22, 781 N.W.2d at 488. This is not one of those limited, extraordinary circumstances. The circuit court did not abuse its discretion in granting David's motion for a judgment as a matter of law.[4]

*Attorney's Fees*

[¶12.] Ellen and Keith argue that the circuit court failed to enter sufficient findings of fact and conclusions of law supporting its award of $7,815 in attorney's fees to David. Ellen and Keith also argue that the findings of fact that were entered

---

4. Ellen and Keith also argue that a number of the circuit court's findings of fact were not supported by evidence in the record. We disagree. Much of the relevant evidence is found in affidavits submitted by the parties. Moreover, the challenged findings are not dispositive because Ellen and Keith never established their initial burden of demonstrating parental unfitness or extraordinary circumstances.

by the circuit court were not supported by the evidence. An award of attorney's fees is reviewed under the abuse of discretion standard. *See Olson v. Olson*, 1996 S.D. 90, ¶ 25, 552 N.W.2d 396, 402.

[¶13.] A circuit court may award attorney's fees "if appropriate, in the interests of justice . . . in all cases of . . . visitation." SDCL 15-17-38. An award is based on a two-step analysis:

> First, the court must determine what constitutes a reasonable attorney['s] fee. This requires consideration of (1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required. Second, it must determine the necessity for such fee. That is, what portion of that fee, if any, should be allowed as costs to be paid by the opposing party. This requires consideration of the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Edinger v. Edinger*, 2006 S.D. 103, ¶ 17, 724 N.W.2d 852, 858 (alteration in original). The circuit court must "enter findings of fact and conclusions of law when ruling on a request for attorney['s] fees." *Smetana v. Smetana*, 2007 S.D. 5, ¶ 20, 726 N.W.2d 887, 895. Without findings of fact and conclusions of law, this Court cannot conduct an adequate review of the circuit court's decision. *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶¶ 30, 33, 687 N.W.2d 507, 514-15.

[¶14.] The record reflects that the circuit court considered whether the award was reasonable and necessary. The court also made sufficient findings on the relevant factors. With regard to reasonableness, David presented an itemization of his attorney's time spent on the case, and the court found that David's request for attorney's fees was reasonable. From the language in the court's findings and

conclusions, it is apparent that the court considered the labor, time involved, and time required for trial. With respect to necessity, the court considered the parties' property, relative incomes, fixed or liquid assets, and whether either party unreasonably increased time spent on the case. The court found that David was a "stay-at-home father," and worked only to supplement the social security benefits on which he lived. The court also observed that Ellen and Keith enjoyed a more favorable financial position operating their ranch with their son. The court further considered that this matter was pursued by Ellen and Keith even after David had offered visitation in South Dakota. We conclude that the court's findings and conclusions were based on sufficient evidence, were sufficient to support the award, and were sufficient to permit appellate review.

[¶15.] Ellen and Keith, however, also argue that the circuit court did not hear any testimony on the necessity factors.[5] We disagree. Through Ellen's testimony, affidavits, hearings, and the pleadings, the circuit court was privy to information about the parties' assets, incomes, and time spent on the case. Ellen testified that Becky had been the "big breadwinner" in the marriage, while David had struggled financially to keep the shop he operated open. Ellen also testified about the financial strain Becky and David faced when Becky was unable to work during her pregnancy and postpartum care. Other evidence reflects that after Becky's death in 2009, David's financial struggles escalated when he lost his home by foreclosure and

---

5. Ellen and Keith did not request a hearing on attorney's fees, and they do not argue that the circuit court erred in not holding a hearing. *Cf. Brennan v. Brennan*, 88 S.D. 541, 543, 224 N.W.2d 192, 193 (1974) ("When objections were timely made[,] defendant's request for a hearing [concerning attorney's fees] should have been granted.").

had to care for his children as a single father.  While David's financial struggles increased upon Becky's 2009 death, Ellen and Keith received the proceeds of a $100,000 insurance policy Becky had purchased during college.  Further, there was evidence that at the time of the 2011 trial, Ellen and Keith continued to operate their 13,000-acre ranch with family members.  The court did not err in awarding attorney's fees.

[¶16.]     Affirmed.

[¶17.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.